THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

LITWAK LAW GROUP
Jack Litwak (Ariz. Bar No. 032153)
1 North 1st Street, Suite 600
Phoenix, Arizona 85004
Telephone: (845) 558-1448
jlitwak@litwaklawgroup.com

*Attorneys for Plaintiff Jacob Moore*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jacob Moore, a single man,<br><br>                    Plaintiff,<br><br>v.<br><br>State of Arizona, a governmental entity; Charles Ryan, in his individual capacity; David Shinn, in his individual capacity; Gerald W. Thompson, in his individual capacity; Travis Scott, in his individual capacity;<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

For his Complaint against the State of Arizona, Charles Ryan, David Shinn, Berry Larson, Gerald Thompson, and Travis Scott, Plaintiff Jacob Moore through undersigned

counsel, hereby alleges as follows:

## **OVERVIEW**

1.     Since 2003, individuals inside the Arizona Department of Corrections complained about broken cell-door locks at Lewis Prison.  Guards weren't safe from attack and neither were inmates.  Yet, even as the number of assaults and inmate deaths climbed, officials within the Department failed to act.  Not only did they fail to repair malfunctioning locks, but they failed to ask the Arizona State Legislature for funds for these important and necessary capital improvements.

2.     Plaintiff Jacob Moore was a victim of the Department's inaction.

3.     In April 2019, he was housed at the Buckley Yard at Lewis Prison.  His cell-door lock, like so many others, didn't work properly.  As a result, inmates were able to gain access to his cell and assault him, leaving him seriously injured and emotionally traumatized.

4.     This Complaint is brought to right that wrong and hold ADC and its employees accountable for failing to protect inmates in its custody, care, and control—like Mr. Moore—from extreme and unnecessary violence.

## **PARTIES**

5.     Plaintiff Jacob Moore is a single man who is currently incarcerated at the Arizona State Prison Complex Aspen, located in Phoenix, Arizona.  At all times relevant to this suit, he was incarcerated at the Arizona State Prison Complex Lewis facility, located in Buckeye, Arizona.  He has suffered significant injuries while under the care and custody of the State of Arizona.

6.     Defendant Charles Ryan is a citizen of the United States and is the former Director of the Arizona Department of Corrections ("ADC"), which owns and operates the state prisons, housing individuals convicted of certain crimes within the State of Arizona. ADC is the governmental entity with ultimate authority and control over the conditions

within the state prison system.  Defendant Ryan served as the Director of ADC until September 2019.  As Director, Defendant Ryan was responsible for establishing, administering, and applying statewide operations, policies, institutions, and programs of ADC, which directly affect how all incarcerated individuals, including Jacob Moore, are housed and protected at the prison.  This included making budgeting, construction, and maintenance decisions regarding prison locks. Upon information and belief, Defendant Ryan resides in Maricopa County, Arizona.  Defendant Ryan is sued in his individual capacity for damages.

7.    Defendant David Shinn is the current Director of ADC, which owns and operates the state prisons, housing individuals convicted of certain crimes within the State of Arizona.  ADC is the governmental entity with ultimate authority and control over the conditions within the state prison system.  Defendant Shinn was appointed as the Director of ADC in October 2019. As Director, Defendant Shinn is responsible for establishing, administering, and applying statewide operations, policies, institutions, and programs of ADC, which directly affect how all incarcerated individuals, including Jacob Moore, are housed and protected at the prison.  This includes making budgeting, construction, and maintenance decisions regarding prison locks. Upon information and belief, he resides in Maricopa County, Arizona. Defendant Shinn is sued in his individual capacity for damages.

8.    Defendant Gerald Thompson in the Warden at Lewis prison. Upon information and belief, he resides in Maricopa County, Arizona.  As the Warden, he is responsible for administering and managing Lewis prison and providing for the safety of the individuals incarcerated at that facility. At all times relevant to the complaint, Defendant Thompson was acting under the color of law, in furtherance of the interests of the Arizona Department of Corrections and State of Arizona, and within the course and scope of his employment.

9.    Defendant Travis Scott in the Deputy Warden at the Buckley Yard at Lewis

- 3 -

prison. As the Deputy Warden, he is responsible for administering and managing the Buckley Yard at Lewis prison and providing for the safety of the individuals incarcerated at that yard. Upon information and belief, he resides in Maricopa County, Arizona.  At all times relevant to the complaint, Defendant Scott was acting under the color of law, in furtherance of the interests of the Arizona Department of Corrections and State of Arizona, and within the course and scope of his employment.

10.    At all times relevant to the allegations in this Complaint Defendants Ryan, Shinn, Thompson, and Scott (collectively, the "Prison Official Defendants") were acting under the color of state law.  The Prison Official Defendants are under a duty to run the corrections operations in a lawful manner so as to preserve for individuals in the custody of ADC the rights, privileges, and immunities guaranteed to them by the Constitutions and laws of the United States of America and the State of Arizona.

11.    Upon information and belief, there are currently unknown State of Arizona employees and other personnel who caused or contributed to Plaintiff's injuries.  The identity and roles of these individuals are uniquely within the possession of the State of Arizona and Plaintiff will amend his complaint to add such responsible individuals upon discovery of their identities.

12.    Defendant State of Arizona ("State") is a state of the United States of America, entering the union as the 48th state in 1912.  The State operates the Arizona Department of Corrections ("ADC"), which owns and operates the state prisons, housing convicted individuals within the State of Arizona, and is the governmental entity with ultimate authority and control over conditions within the state prison system.  At all relevant times, the State was acting by and through its duly authorized employees, agents, and/or administrators of ADC, who at all relevant times were acting within the course and scope of their employment, under the color of state law, and in accordance with the State's policies, practices and customs.

13.     The State is under a duty to run its corrections operations in a lawful manner so as to preserve for the individuals under its custody and control the rights, privileges, and immunities guaranteed to them by the Constitution and laws of the United States of America and the State of Arizona.

14.     The State has established, or delegated, ADC the responsibility for establishing and implementing policies, practices, procedures, and/or customs used by its Wardens, Deputy Wardens, and corrections officers employed by the State.

15.     Every act and omission of the employees, representatives, and agents of Defendants detailed in this Complaint was performed under the color and pretense of the Constitutions, statutes, ordinances, regulations, customs, and uses of the United States of America and the State of Arizona, by virtue of their authority as sworn corrections officers, and within the course and scope of their employment.

16.     For Plaintiff's state law claims, but not for claims under section 1983, the State is responsible for the wrongful acts or omissions of its employees under the doctrine of *respondeat superior*.

**JURISDICTION, AND VENUE**

17.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3)(4) and 1367(a). This Court has jurisdiction over Plaintiff's claims for violation of his civil rights under 42 U.S.C. § 1983 and pendent jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(a).

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District within one year of the filing of the original Complaint, and this Court otherwise has jurisdiction.

19.     This case presents an actual case in controversy arising under the Eighth and Fourteenth Amendments to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

1

## **GENERAL ALLEGATIONS**

2

### Prison Official Defendants Fail to Fix Broken Cell-Door Locks

3

    20.    On April 25, 2019, Phoenix ABC Channel 15 aired a story about

4

malfunctioning prison locks at Lewis Prison in Buckeye, Arizona. The surveillance video

5

was shocking and showed hordes of inmates, streaming from their cell doors, which didn't

6

work properly, to attack vastly outnumbered and unprotected prison guards.[1]

7

    21.    Shortly after, Sergeant Gabriela Contreras, an employee at ADC, came

8

forward, revealing that her and her team had made daily reports about malfunctioning cell-

9

door locks since early November 2018.[2]

10

    22.    But this wasn't the first time the issue of malfunctioning, broken, or flawed

11

locks had been brought to the attention of ADC or the Prison Official Defendants. Indeed,

12

complaints had been circulating for nearly thirty years—and since 2003 for Lewis Prison.

13

And every year that Prison Official Defendants failed to act, the cost of repairs increased.[3]

14

    23.    In light of these revelations, Governor Doug Ducey asked investigators,

15

including Arizona Supreme Court Justices Rebecca White Berch and Ruth McGregor, to

16

provide "an independent, third-party review into matters of security at the Arizona

17

Department of Corrections," and to specifically "provide an assessment of problems related

18

to cells locks at Lewis Prison."[4]

19

---

[1] "Unlocked and Unsafe," ABC 15, available at: https://www.abc15.com/news/local-news/investigations/unlocked-and-unsafe-leaked-videos-expose-arizona-prisons-broken-cell-doors.

20

21

[2] "Lewis Prison Whistleblower: Issue with cell door. Locks 'isn't something new,'" AZ Family, available at: https://www.azfamily.com/news/lewis-prison-whistleblower-issue-with-cell-door-locks-isn-t/article_2d4fdf80-7c11-11e9-9ac4-f3fce82b91d0.html

22

[3] "Locks at Arizona's Prisons Have Had Problems for Decades—Who's to Blame," AZ Central, available at: https://www.azcentral.com/story/news/politics/arizona/2019/05/09/arizona-prison-system-broken-cell-locks-department-of-corrections-doug-ducey/1129754001/

23

24

[4] "Report to the Governor: The Effectiveness of Locks at Lewis Prison," available at: https://www.azcentral.com/story/news/politics/arizona/2019/05/09/arizona-prison-system-broken-cell-locks-department-of-corrections-doug-ducey/1129754001/

25

26

24.     The investigators drafted a 52-page report, published in August 2019.  It was scathing in its condemnation of ADC and Defendant Ryan, in particular, for failing to take action to repair broken cell-door locks.   The primary fault these Justices/Investigators found, however, was not only that ADC Officials had failed to address the broken-lock problem, but that they had never even asked the Arizona State Legislature for money to fix it, even as inmate assaults and deaths soared.[5]

25.     Defendant Ryan announced his retirement the same month the Report was published.

Mr. Moore is Assaulted Inside His Cell With a Broken Lock

26.     On April 3, 2019, numerous inmates threatened to kill Mr. Moore while he was at "chow."   Mr. Moore immediately informed ADC staff of these threats.   Upon information and belief, no staff member investigated or followed-up on these claims.

27.     Later that same day, Mr. Moore was assaulted inside his cell on the Buckley yard.  Mr. Moore believes that the inmates who assaulted him were the same ones who had threatened him earlier that day.

28.     During this assault, Mr. Moore sustained two black eyes, a laceration above his eyelid, along with numerous contusions along the rest of his body.

29.     No member of ADC staff intervened to prevent or halt this assault.

30.     The inmates who assaulted Mr. Moore were able to gain access to his cell on the Buckley yard because his cell-door lock was broken.

31.     After this assault, Mr. Moore submitted a Health Needs Request for medical attention, which ADC denied.

32.     On April 7, 2019, Mr. Moore submitted a request for new housing because his cell-door lock was broken and he was afraid of being attacked again.

---

[5] *Id.*

33.     Rather than change his housing or fix his broken cell door, ADC officials disciplined Mr. Moore and gave him a ticket for "refusing to house".  Mr. Moore was then transferred to the Refuse to House unit, in close proximity to the inmates who had originally assaulted him.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983—"Deliberately Indifferent" Policies, Practices, Customs, Training, and Supervision in Violation of the 8th and 14th Amendments**
*(Against Prison Official Defendants and the State of Arizona only)*

34.     Plaintiff hereby incorporates all allegations contained in the foregoing paragraphs as if they were full set forth herein.

35.     42 U.S.C section 1983 provides, in relevant part, as follows:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

36.     At the time of the complained-of events, the Prison Official Defendants knew that the cell-door locks on the Buckley Yard at Lewis Prison were defective and malfunctioning.

37.     The Prison Official Defendants knew that individuals housed on that Yard, including Plaintiff, faced extreme and substantial vulnerability to violence as a result of these broken cell-door locks.

38.     The Prison Official Defendants knew, or should have known, that Plaintiff had complained of threats of deadly violence the same day he was assaulted, and that he could not gain protection inside his cell.

39.     At the time of the complained-of events, the Eight and Fourteenth Amendments to the United States Constitution guaranteed Plaintiff the right to be free from

assault and battery inside the prison.

40.    At the time of the complained-of events, any reasonable Prison Official Defendant would have known that the Constitution clearly establishes the right of American citizens to not be housed in conditions that were "deliberate[ly] indifferen[t]" to their health and safety.

41.    The Prison Official Defendants consciously chose not to fix the broken cell-door locks on the Buckley Yard, and chose to expose vulnerable individuals within their custody and control to substantial risks of violence; i.e., they made a conscious and deliberate choice to follow a course of action from among various alternatives.

42.    The Prison Official Defendants have fostered, created, and tolerated an atmosphere of unsafety and lawlessness, having developed and maintained long-standing, department-wide customs, law enforcement-related policies, procedures, customs, practices of failing to properly maintain cell-door locks in a manner amounting to deliberate indifference to the constitutional rights of Mr. Moore and other individuals who are housed in cells with defective cell-door locks inside of ADC.

43.    The Prison Official Defendants also failed to properly train and/or supervise its officers in investigating claims of violence, intervening to stop attacks, and/or how to maintain cell-door locks in a manner amounting to deliberate indifference to the constitutional rights of Mr. Moore and other individuals who are housed in cells with defective cell-door locks inside of ADC.

44.    Defendants are not entitled to qualified immunity for the complained-of conduct.

45.    As a direct and proximate result of the Prison Official Defendants intentional actions and unlawful conduct, Plaintiff has suffered, and continues to suffer, irreparable injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

46.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

**SECOND CLAIM FOR RELIEF**
**Gross Negligence Under Arizona Law**
***(Against the Prison Official Defendants and the State of Arizona)***

47.     Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

48.     The Prison Official Defendants owed Plaintiff a duty of reasonable care, namely, the duty to act as reasonable prison officials, under the circumstances, and to exercise reasonable care with respect to his safety, physical health, and mental health.

49.     The Prison Official breached their respective duties of reasonable care to Plaintiff when, among other things, they failed to maintain or repair Plaintiff's broken and malfunctioning cell-door lock.

50.     Reasonable prison officials in Defendants' respective aforementioned positions would not have undertaken these acts and omissions.

51.     As a direct and proximate result of the Prison Official Defendants acts and omissions, Plaintiff was injured and suffered damages in an amount to be proven at trial.

52.     As set forth herein, the Prison Official Defendants were acting within the course and scope of their employment as employees for the State of Arizona when they failed to repair and maintain Plaintiff's cell-door lock.  At all times relevant to this Complaint, the Prison Official Defendants were on-duty, working in their regular job capacity; working in the time, place, and manner authorized by their employer; and their actions and omissions were motivated, at least in part, by a purpose to serve the State of Arizona.

53.     Because the Prison Official Defendants were acting within the course and scope of their employment for the State of Arizona, Defendant State of Arizona is

vicariously liable for the damages caused by their tortious conduct.

54.    As set forth herein, these currently unknown ADC employees were acting within the course and scope of their employment as corrections officers for ADC.  During the sum of their involvement in this matter:  All such currently unknown ADC employees were performing acts they were authorized to perform; were on-duty, working in their regular job capacity; and their actions were motivated, at least in part, by a purpose to serve ADC and the State of Arizona.

55.    Because these currently unknown ADC employees were acting within the course and scope of their employment for ADC and the State of Arizona, Defendant State of Arizona is vicariously liable for the damages caused by these employees' tortious conduct.

56.    In addition to its vicarious liability, the State of Arizona is also directly liable for negligence insofar as it failed to act reasonably in hiring, training, and/or supervising the Prison Official Defendants and currently unknown ADC employees.

**THIRD CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress Under Arizona Law**
***(Against Prison Official Defendants and the State of Arizona)***

57.    Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

58.    The above-described actions of the Prison Official Defendants and currently unknown ADC employees– failing to maintain or repair Plaintiff's cell-door locks; failing to investigate threats of violence; failing to intervene to stop an assault; and retaliating against Plaintiff for reporting an assault and broken cell-door lock – were extreme and outrageous.

59.    An average member of the community would regard the conduct referenced in the foregoing paragraph as atrocious, intolerable in a civilized community, and beyond

all possible bounds of human decency.

60.     The above-described conduct of the Prison Official Defendants and currently unknown ADC employees was intentional insofar as they intended to cause Plaintiff emotional distress.

61.     The above-described conduct of the Prison Official Defendants and currently unknown ADC employees was reckless because they were aware of and consciously disregarded the near certainty that it would cause Plaintiff emotional distress.

62.     The above-described conduct of the Prison Official Defendants and currently unknown ADC employees caused Plaintiff to suffer emotional distress.

63.     As a direct and proximate result of the actions the Prison Official Defendants and currently unknown ADC employees, Plaintiff was injured and suffered damages in an amount to be proven at trial.

64.     As set forth herein, the Prison Official Defendants and currently unknown ADC employees were acting within the course and scope of their employment as employees of the State of Arizona during the sum of their involvement in this matter:  All such Prison Official Defendants and currently unknown ADC employees were performing acts they were authorized to perform; were on-duty, working in their regular job capacity; and their actions were motivated, at least in part, by a purpose to serve the State of Arizona.

65.     Because the Prison Official Defendants and currently unknown ADC employees were acting within the course and scope of their employment for the State of Arizona, Defendant State of Arizona is vicariously liable for the damages caused by these employees' tortious conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jacob Moore hereby requests that the Court enter judgment against Defendants and issue an award in Plaintiff's favor as follows:

a.   For damages in an amount to compensate Mr.  Moore fairly and fully for the

numerous violations of his Constitutional Rights;

b. For general, consequential, special, and compensatory damages, including but not limited to Plaintiff's pain and suffering, mental anguish, emotional suffering, and loss of enjoyment of life, arising both out the violations of both his constitutional rights and the Defendants' tortious conduct;

c. For nominal damages as provided for by law;

d. For prejudgment interest on all liquidated sums;

e. For attorneys' fees under 42 U.S.C. §§ 1983 and 1988, and as provided for by Arizona law;

f. For Mr. Moore's costs and other expenses incurred in this action; and

g. Such other and further relief as the Court deems just.

DATED this 2nd day of April, 2020

THE PEOPLE'S LAW FIRM, PLC
645 North 4th Avenue, Suite A
Phoenix, AZ  85003

By _____
Stephen Benedetto
Heather Hamel

*Attorneys for Plaintiff Jacob Moore*